UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL KANDLER,

    Plaintiff,

v.                                                                                          Case No. 14-12276

                                                                         HON. AVERN COHN

DUNN PAPER, INC.,

    Defendant.

_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 7)</u>**

**I. INTRODUCTION**

This is an employment discrimination case. Carl Kandler (Plaintiff) is suing Dunn Paper, Inc. (Defendant), alleging discrimination on the basis of age in violation of the Age Discrimination in Employment Act (ADEA) and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), and on the basis of disability in violation of the Americans with Disabilities Act (ADA) and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA). In addition, Plaintiff alleges retaliation under the Michigan Worker's Disabilities Compensation Act (WDCA).

Now before the Court is Defendant's Motion for Summary Judgment (Doc. 7). For the reasons that follow, the motion will be granted.

1

## II. BACKGROUND[1]

### A. Factual Background

Defendant operates a paper mill in Port Huron, Michigan. Plaintiff, born in 1939, was employed by Defendant as a millwright and pipefitter. He began working for Defendant in 1979. As of early 2014, he was approximately 74 years old. Plaintiff is diabetic. He began receiving social security retirement benefits at age 65.

Defendant's paper mill consists of a basement where paper rolls are stored, a ground level where pumps and motors are located, and an upper level where paper machines are located. Plaintiff's job duties included repairing equipment and paper machines, often requiring him to climb a ladder to access the taller paper machines. In addition, he was tasked with working on pipes that run along the ceilings of the ground floor and upper floor. Plaintiff often worked afternoon and midnight shifts where he was the only millwright working. Additionally, the paper mill does not have air conditioning, often reaching below-freezing temperatures during the winter and temperatures exceeding 90 degrees during the summer. Because the paper mill uses a large amount of water, the floor is often wet in some places and constantly wet in others.

On March 17, 2013, Plaintiff suffered a workplace injury. That day, his feet became wet after standing in a foot-and-a-half of water while repairing a broken sump pump. After completing the repairs, Plaintiff placed his feet by a heater to warm them. However, because of his diabetes, he has no feeling in his feet and did not realize until later that he burned his foot. Plaintiff was treated at the hospital and reported the injury to Defendant. Plaintiff's doctor took him off work on March 18, 2013.

---

[1] The background of the case which follows is taken from the Joint Statement of Facts to Defendant's Motion for Summary Judgment (Doc. 18).

During the time Plaintiff was off work, Plaintiff collected workers' compensation benefits. Around the same time, Defendant's human resources personnel were considering whether Plaintiff's disability benefits could be "offset" under the WDCA based on the Social Security benefits he was receiving. Human resources personnel determined that Defendant had not sought statutorily permitted reductions in benefits, and that Plaintiff was receiving more in the way of benefits than he was entitled to. Defendant disputed Plaintiff's continued receipt of disability benefits with the Workers' Compensation Agency (WCA), which resulted in age-based and wage earning capacity reductions in Plaintiff's benefits. In a letter dated September 26, 2013, Plaintiff later received a letter from the WCA advising him that his workers' compensation benefits had been reduced because he was also collecting Social Security retirement benefits. .

On August 27, 2013, Plaintiff's doctor released him to return to work without restrictions effective September 3, 2013. On September 16, 2013, Plaintiff went to the hospital after noticing that the wound on his foot had reopened. Plaintiff's doctor subsequently took him off work indefinitely until the site healed.

Between September and December 2013, Plaintiff periodically went to the hospital for treatment for his foot. During this time, Plaintiff's doctor told him that he could no longer wear work boots and should limit himself to wearing diabetic boots. Plaintiff acknowledges that this kind of boot would not protect his feet from wetness or from falling objects. On January 7, 2014, Plaintiff's doctor provided him a return-to-work note with the following restrictions: no getting his feet wet, climbing ladders, or exposure to extreme temperatures. To Plaintiff's knowledge, these restrictions are permanent and continue in place.

Plaintiff told these restrictions to Richard Harter, Defendant's human resources director, who then consulted with Plaintiff's supervisor. Given Plaintiff's restrictions, management determined that, because the floor of the paper mill was always wet and because the paper mill was frequently subject to extreme temperatures, there were no hourly positions or other jobs that Plaintiff could perform. Further, although Defendant provides temporary light duty assignments for employees that cannot perform their regular job because of *temporary* work restrictions, it does not provide permanent light duty assignment to employees with *permanent* work restrictions.

In February 2014, Plaintiff went to the paper mill to receive his vacation pay. While there, he asked Harter whether there had been a meeting between the company and the union, and inquired about his workers' compensation benefits and his sickness and accident (S&A) disability benefits. When Plaintiff asked why he had not been receiving these benefits, Harter replied, "a lot of it has got to do with your age." Plaintiff says that Harter told him that he "should probably get a lawyer." However, no derogatory comments were made about his medical condition or his workers' compensation claim. This is the only conversation during which Plaintiff and Harter discussed these issues.

Although disputed by Plaintiff, Harter says that during their conversation, he told Plaintiff that Defendant could not accommodate his permanent restrictions, and that he sought clarification regarding what the doctor meant by "extreme temperatures." Harter says that several times he tried to explain the age-based reductions in workers' compensation permitted under the WDCA and, because Plaintiff did not appear to understand his explanation, he suggested that Plaintiff speak to "counsel."

4

Defendant placed Plaintiff on an unpaid leave of absence; however, given the permanent nature of Plaintiff's work limitations, this was tantamount to a discharge.[2] Defendant has not hired anyone to replace Plaintiff; rather, Defendant has for the time being filled Plaintiff's position with a millwright from a different shift.

### B. Plaintiff's Legal Claims

Plaintiff makes claims under (1) the ADA and the PWDCRA, claiming that Defendant discharged him and in so doing discriminated against him because of his disabilities; (2) the WDCA, claiming retaliation against him for exercising his rights under the act; and (3) the ADEA and the ELCRA, claiming that Defendant discharged him and discriminated against him because of his age.

### III. STANDARD OF REVIEW

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here. Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

### IV. DISCUSSION

### A. Plaintiff's Claims Under the ADA and the PWDCRA

In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case of employment discrimination under the ADA or under the PWDCRA. Specifically, it argues that Plaintiff cannot show, given his permanent work

---

[2] Defendant claims that although Plaintiff was placed on an unpaid leave of absence of an indefinite length, he is still employed with Defendant. However, as noted, Plaintiff's work restrictions place a permanent limitation on his ability to work; therefore Defendant can fairly be said to have discharged Plaintiff.

5

restrictions, that he can perform the job of a millwright, with or without reasonable accommodation.

Under the ADA, to establish a *prima facie* case of discrimination based on a disability, the plaintiff must show that "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap*.*" *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998) (citations omitted). An "otherwise qualified" individual is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Similarly, under the PWDCRA, a plaintiff must show "(1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Peden v. City of Detroit*, 470 Mich. 195, 204 (2004). "'Unrelated to the individual's ability' means, with or without accommodation, an individual's disability does not prevent the individual from . . . performing the duties of a particular job or position." MCL 37.1103(l)(i).

Here Plaintiff's doctor permanently restricted him from exposure to extreme temperatures, getting his feet wet, and climbing ladders. It is undisputed that the paper mill is frequently subject to extreme temperatures and the floors are often, if not constantly wet. In addition, the ability to climb ladders is an essential function of a millwright. Plaintiff has admitted that he could not work at the paper mill on hot or cold days, or if he got his feet wet, or if he were required to climb ladders. Defendant says

6

that there is no reasonable accommodation available, without hiring another millwright for those times when Plaintiff is unable to work.

Defendant's position has merit. Plaintiff has not demonstrated how, given his permanent work restrictions, he can perform the job of millwright, with or without an accommodation from Defendant. In addition, Plaintiff's response makes no arguments with respect to his claims under the ADA or the PWDCRA (See Doc. 10).

### B. Plaintiff's Claims under the WDCA

Under the WDCA, an employer is prohibited from discharging or discriminating against an employee because the employee exercised a right under the WDCA. MCL 418.301(13). To establish a *prima facie* case, a plaintiff must demonstrate "a causal connection between the protected activity, i.e., the filing of his workers' compensation claim, and the adverse employment action." *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 470 (1999). However, "when a plaintiff asserting a claim for retaliatory discharge under MCL 418.301(13) circumstantially establishes a rebuttable *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its adverse employment action." *Cuddington v. United Health Servs., Inc.*, 298 Mich. App. 264, 276-77 (2012). The plaintiff is then required to demonstrate that the proffered reasons were pretextual and that the retaliation was a "motivating factor" for the adverse employment action. *Id.*

Here, Defendant has articulated a non-retaliatory reason for discharging Plaintiff: the fact that, given Plaintiff's permanent work restrictions, he is unable to perform the essential functions of his job. Plaintiff proffers no evidence that Defendant's reasons were pretextual, and admits that no one at Defendant made derogatory

7

comments regarding his workers' compensation claim after he injured his foot for the first time. In addition, Plaintiff was reinstated promptly in September 2013 when his doctor released him to return to work without restrictions. Finally, Plaintiff's response brief makes no arguments with respect to his claims under the WDCA (See Doc. 10).

### C. Plaintiff's Claims Under the ADEA and the ELCRA

Finally, Defendant argues that Plaintiff cannot prevail under the ADEA or the ELCRA. Specifically, it argues that Plaintiff cannot show that Defendant's decision to dischargee Plaintiff was motivated because of his age.[3]

### *1. Plaintiff's Direct Evidence Age Discrimination Claim Under the ADEA*

Plaintiff says that Harter's statements to him in February 2014 is direct evidence of discriminatory intent. Plaintiff explains that he asked Harter "about workman's comp and coming back and all of that stuff and [Harter] just said, it's because of your age . . ." Plaintiff says that this was Harter's rationale for (1)

---

[3] Plaintiff additionally claims that Defendant discriminated against him in its decision to deny him workers' compensation benefits and S&A disability benefits.

However, Defendant points out that under Article XIII, § 13.6 of the collective bargaining agreement, S&A disability benefits are only available for "non-occupational" disabilities (Doc. 17. Exhibit G). Here, Plaintiff's disability was an occupational injury, and therefore he was not entitled to S&A disability benefits under the collective bargaining agreement.

Similarly, whereas the ADEA/ELCRA addresses discrimination by employers against employees, the administration of workers' compensation claims is addressed under the WDCA. It has been held that "workers' compensation law provisions do not constitute compensation, terms, conditions or privileges of employment within the meaning of [the ADEA]." *See Peck v. Gen. Motors Corp.*, 164 Mich. App. 580, 599 (1987), *rev'd in part on other grounds*, 432 Mich. 892 (1989). The same reasoning applies to the ELCRA. Here, Defendant was within its statutory right under the WDCA to seek age-based and wage earning capacity in Plaintiff's workers' compensation benefits.

Crucially, Plaintiff cites no case law in support of his argument that statutory workers' compensation benefits and S&A disability benefits under a collective bargaining agreement can be sought collaterally though a discrimination action under the ADEA/ELCRA. Therefore, the only employment action Plaintiff properly challenges is Defendant's decision to discharge him.

discharging him, and (2) denying his workers' compensation and S&A disability benefits. In addition, Plaintiff notes testimony from Harter's assistant, stating that Harter had discussed Plaintiff's age, asking, "Why doesn't he just retire?" Plaintiff contends that the "because of your age" and "Why doesn't he just retire?" remarks constitute direct evidence of age discrimination.

In arguing for summary judgment, Defendant essentially says that Plaintiff misconstrued the conversation with Harter in February 2014. Indeed, based on Plaintiff's own testimony, it is unclear whether the "because of your age" comment was related to his discharge, or to his inquiry regarding workers' compensation and S&A disability benefits. However, as noted above, Plaintiff can only properly challenge Defendant's decision to discharge him.

### a. Legal Standard

Under the ADEA, a plaintiff may demonstrate age discrimination through direct or circumstantial evidence. To prevail based on direct evidence at the summary judgment stage, a plaintiff must establish "by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). Similarly, direct evidence is evidence, which, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 530 (6th Cir. 2014). "Discriminatory remarks by decision makers and those who significantly influence the decision-making process can constitute direct evidence of discrimination." *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013).

### b. Defendant's Position

Defendant argues that, under the ADEA, Plaintiff fails to show that his age was the "but-for" factor in its decision to discharge Plaintiff. Defendant's arguments have merit.

Defendant correctly argues that "direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA context." *Scheick*, 766 F.3d at 532. The court in *Schieck* further explained:

> [E]ven when direct evidence of age discrimination has been offered, the question to be asked in deciding an employer's motion for summary judgment is whether the evidence, taken as a whole and in the light most favorable to plaintiff, is sufficient to permit a rational trier of fact to conclude "that age was the 'but-for' cause of the challenged employer decision."

*Id.* (quoting *Gross*, 557 U.S. at 178).

Here, Plaintiff has not demonstrated that age was the "but-for" cause of Defendant's decision. Instead, it was Plaintiff's permanent work restrictions that effectively prevented him from working as a millwright. In addition, Harter's "because of your age" remark was made in the context of explaining to Plaintiff the age-based wage loss reductions permitted under the WDCA—not as an explanation for why Defendant could not find a reasonable accommodation. Further, the "Why doesn't he just retire?" remark does not qualify as direct evidence because it does not "require the conclusion" that age was the 'but-for' cause of Defendant's decision. The fact that Defendant promptly returned Plaintiff to work following his first injury as soon as Plaintiff's doctor released him to return to work further supports Defendant's claim that it was not age-based animus, but Plaintiff's permanent work restrictions that caused it to discharge Plaintiff.

### *2. Plaintiff's Direct Evidence Age Discrimination Claim Under the ELCRA*

#### a. Legal Standard

Similarly, a plaintiff may demonstrate age discrimination through direct or circumstantial evidence under the ELCRA. If a plaintiff presents direct evidence of age discrimination, courts apply a mixed-motive framework. *Harrison v. Olde Fin. Corp.*, 225 Mich. App. 601, 609-11 (1997). Direct evidence is evidence that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor." *Id.* at 610. Under the mixed-motive framework, the plaintiff "bears the burden of persuading the trier of fact that the employer acted with illegal discriminatory animus." *Id.* at 612. In addition, "whatever the nature of the challenged employment action, the plaintiff must establish evidence of the plaintiff's qualification (or other eligibility) and direct proof that the discriminatory animus was causally related to the decisionmaker's action." *Id.* at 613. In defense, "the employer may also assume the burden of persuading the factfinder that, even if the plaintiff's allegations are true, the employer would have made the same decision without consideration of discriminatory factors." *Id.*

#### b. Defendant's Position

Plaintiff's direct evidence age discrimination claim under the ELCRA similarly cannot prevail. Even if Harter's comments demonstrate that age was "at least a motivating factor" in Defendant's decision, Plaintiff must also show "evidence of the plaintiff's qualification (or other eligibility) and direct proof that the discriminatory animus was causally related to the decisionmaker's action." *Harrison*, 225 Mich. App at 610-12. Here, given Plaintiff's permanent work restrictions, he has not demonstrated that he was otherwise qualified to continue his position as millwright. Nor has Plaintiff shown that

discriminatory animus was causally related to Defendant's decision. Given Plaintiff's obligations to avoid extreme temperatures, getting his feet wet, and climbing ladders, there is little question that Defendant would have made the same decision without consideration of Plaintiff's age.

### 3. Plaintiff's Circumstantial Age Discrimination Claim

#### a. Legal Standard

To prevail based on circumstantial evidence under the ADEA, the Sixth Circuit employs the burden-shifting regime of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> . . . . The first step of the *McDonnell Douglas* test requires the plaintiff to establish a *prima facie* case of age discrimination by showing that the plaintiff (1) was a member of a protected class of persons (i.e., persons 40 years of age or over), (2) was discharged, (3) was qualified for the position held, and (4) was replaced by someone outside of the protected class*. Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir.2005).
>
> "Once a plaintiff satisfies his or her *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Ercegovich* [*v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)]. "If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Id.*

*Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). To demonstrate that a nondiscriminatory reason for his discharge is pretextual, a plaintiff must show "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis in original) (citation omitted). A plaintiff must prove pretext by a preponderance of the evidence. *Ercegovich*, 154 F.3d at 354.

Circumstantial age discrimination claims under the ELCRA are analyzed under the same standards as federal ADEA claims, using the *McDonnell Douglas* framework. *Geiger*, 579 F.3d 626; *Harrison*, 225 Mich. App. at 606.

### b. Defendant's Position

Defendant argues that Plaintiff cannot establish a *prima facie* case of employment discrimination because he cannot show that he was replaced or treated less favorably than a similarly situated, non-protected individual.  To begin, Defendant states that no one, outside the protected class or otherwise, was hired to replace Plaintiff.  Instead Defendant assigned an existing employee to cover the position.  In addition, there is no evidence that Defendant permitted a younger employee to work with permanent restrictions that prevented him to perform the essential functions of his job.[4]

Defendant further argues that, beyond failing to establish a *prima facie* case, Plaintiff cannot show that Defendant's stated reason for its decision is pretextual. Defendant is correct.  Defendant has stated repeatedly that its decision was based on Plaintiff's permanent work restrictions. Plaintiff cannot demonstrate that his permanent work restrictions have no basis in fact, or that they are insufficient to motivate Defendant's decision.  Plaintiff argues that Harter's remark that the decision had "a lot to do with his age" is proof that its reasons were pretextual.  However, as noted above, this remark was made in an attempt to explain to Plaintiff the age-based wage loss reductions permitted under the WDCA.  Given Plaintiff's permanent work restrictions,

---

[4] Plaintiff says that a younger, former employee, Ron Swantek, was assigned to work in the Maintenance Room while he was temporarily restricted from work due to a delayed knee replacement surgery.  However, Swantek's case is distinguishable since his restrictions were temporary, whereas Plaintiff's restrictions are permanent.

Plaintiff has not shown pretext.

Because ELCRA circumstantial age discrimination claims are analyzed under the *McDonnell Douglas* framework, Plaintiff's ELCRA claim fails as well

## V. CONCLUSION

For the above reasons, summary judgment is GRANTED with respect to all of Plaintiff's claims. This case is therefore DISMISSED.

SO ORDERED.

                                             S/Avern Cohn
                                             AVERN COHN
                                             UNITED STATES DISTRICT JUDGE

Dated: February 13, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 13, 2015, by electronic and/or ordinary mail.

                                             S/Sakne Chami
                                             Case Manager, (313) 234-5160